UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JOSE LOPEZ,

                         Petitioner,

-vs-                                                   Case No.  8:04-cv-849-T-17TBM

JAMES V. CROSBY, JR.,

                         Respondent.
_____/

## ORDER

     This cause is before the Court on Petitioner Jose Lopez's amended 28 U.S.C. § 2254

petition for writ of habeas corpus (Doc. No. 4) (hereinafter "petition").  Lopez challenges his

convictions and sentences entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas

County, Florida.

### BACKGROUND

     On July 7, 1998, Lopez was charged with robbery with a deadly weapon (a knife),

kidnapping, and grand theft of a motor vehicle, in case number CRC 98-0480 CFANO, for acts

occurring on May 31, 1998, in violation of sections 812.13(2)(a), 787.01(1)(a)(2), and 812.014,

Florida Statutes (1997). (Resp. Exh. 9, R 36-37.)[1] The State filed notice Lopez qualified for

_____

     [1]The six volume record on direct appeal in case no. 2D00-520 is included in a separately filed paper
appendix as Exhibit 9.

sentencing as a prison releasee reoffender pursuant to section 775.082, Florida Statutes (1997), and an intent to seek an enhanced sentence under section 775.084, Florida Statutes (1997). (Resp. Exh. 9, R 38, 39.) Represented by court-appointed counsel, John W. Hudzietz, Lopez's trial was held before the Honorable Brandt C. Downey, III, Circuit Judge, February 9-10, 2000. (Resp. Exh. 9, AV1:T 1-AV1:T 936.)

The facts adduced at trial revealed Lopez and co-defendant Jennison met victim Shawn Sloan when he asked them for directions. (Resp. Exh. 9, AV2: T 184-85.) Introduced as Jose and Jessie, they accepted a ride from Sloan and that eventually led to their spending the night at Sloan's apartment because they had nowhere else to go. (Resp. Exh. 9, AV2: T 185-91.)

Several days later, Lopez and Jennison went out with Sloan, who used his ATM card to pay for the outing and the three then went back to Sloan's apartment. (Resp. Exh. 9, AV2:T 199-206.) At the apartment, Sloan sat on the foot of his bed and showed Lopez and Jennison a photo album. (Resp. Exh. 9, AV2:T 206-09.) Lopez excused himself and went to the kitchen for some water and when he returned to the bedroom, Lopez suddenly, without provocation, hit Sloan in the face and pulled out a steak knife taken from a butcher block in Sloan's kitchen. (Resp. Exh. 9, AV2:T 209-13.)

Lopez threatened to kill him. (Resp. Exh. 9, AV2:T 212.) Frightened, Sloan crawled up on the bed and, thinking that Sloan was going toward the phone, either Jennison or Sloan pulled the phone out of the wall. (Resp. Exh. 9, AV2:T 214-15.) The cord was ripped out of the phone and, ultimately, used to tie-up Sloan. (Resp. Exh. 9, AV2:T 215-16.) They also gagged Sloan by putting a sock into his mouth. (Resp. Exh. 9, AV2:T 218.) At one point, Lopez stabbed the knife at the victim and into the mattress. (Resp. Exh. 9, AV2:T 223-24.)

Lopez handed off the knife to Jennison while he went through and ransacked the apartment looking for valuables to steal. (Resp. Exh. 9, AV2:T 219-20.) They ultimately got Sloan's wallet and went through it, finding Sloan's ATM card, but not much cash. (Resp. Exh. 9, AV2:T 219-20.) From time to time, they would come back and demand to know where certain items were, such as Sloan's car keys. (Resp. Exh. 9, AV2:T 219-20.)

Lopez also demanded to know Sloan's PIN number and the first few times, Sloan gave them a fake one. (Resp. Exh. 9, AV2:T 220- 21.) Lopez eventually told Sloan that Jennison would stay there while he went to the ATM machine to try the number and if it was the wrong PIN number, he would come back and kill Sloan, so Sloan gave him the correct number. (Resp. Exh. 9, AV2:T 221.)

Lopez and Jennison hog-tied Sloan's feet and hands together and carried him into the bathroom, tearing his clothing in the process. (Resp. Exh. 9, AV2:T 227-28.) They placed Sloan on a comforter and then turned on the water so no one would hear him making noise, and left the apartment taking some of Sloan's clothes, shoes, jewelry, money, and car keys they used to drive away his car. (Resp. Exh. 9, AV2:T 227-28, 263-69.)

Sloan was able to work free of some of his constraints and ended up cutting off some of the bindings with nail clippers. (Resp. Exh. 9, AV2:T 228-29.) He listened and when he did not hear anything, he had to leave the apartment to call law enforcement because all of his phones had been pulled out of the wall and they had taken his cell phone. (Resp. Exh. 9, AV2:T 229.) He ended up at a nearby shopping center where he called 911. (Resp. Exh. 9, AV2:T 230-31.)

Deputies responded and took his statement, including a description of the car and the co-defendants. (Resp. Exh. 9, AV2:T 260-61.) Sloan knew only the first names of the co-

defendants. They went back to the apartment and technicians began processing the crime scene. (Resp. Exh. 9, AV2:T 261-62.)

Sloan said he was not reimbursed by anyone for the items taken from his apartment, no monetary compensation from any insurance company. (Resp. Exh. 9, AV2:T 270.) He said that State Farm reimbursed him for his car, but not what was in it, and he got $15,500 for the car, which meant he lost money on it. (Resp. Exh. 9, AV2:T 270.) He had a five hundred dollar deductible with State Farm. (Resp. Exh. 9, AV2:T 270.) Sloan specifically stated that he had no renter's insurance or homeowner's insurance whatsoever. (Resp. Exh. 9, AV2:T 271.) He had insurance on his cell phone, so he only had to pay a replacement fee of $35 for that phone. (Resp. Exh. 9, AV2:T 263.) The bank reimbursed him for $900 taken using Sloan's ATM card. (Resp. Exh. 9, AV2:T 279.) Sloan denied that the incident was an insurance scam. (Resp. Exh. 9, AV3:T 361.)

Detective Paul Martin talked to Sloan and got his statement. (Resp. Exh. 9, AV4:T 455.) Crime scene technicians dusted for fingerprints, collected some juice bottles from which the two men drank, found the two stab wounds in the mattress, and collected the cords that were used to bind Sloan. (Resp. Exh. 9, AV2:T 261-62, AV4:T 453-54.)

Sloan later met with a sketch artist, who made a composite of the co-defendants. (Resp. Exh. 9, AV2:T 272-73.) Sloan also remembered that his cell phone was used to call one of the men's pagers and the cell phone company ultimately provided the name of Jessie Jennison. (Resp. Exh. 9, AV4:T 469-70, 469-72.)

Investigation of Jennison revealed he has a friend by the name of Jose Lopez. (Resp. Exh. 9, AV4:T 474.) After getting their photographs, Detective Martin constructed two photopack lineups, which he showed to Sloan. (Resp. Exh. 9, AV4:T 475-78.) Sloan positively

identified photographs of Lopez and Jennison as the two men who robbed him. (Resp. Exh. 9, AV4:T 477-78.) Fingerprint evidence found in Sloan's apartment also came back to Lopez and Jennison, who were ultimately arrested. (Resp. Exh. 9, AV4:T 479- 85.) Both Jennison and Lopez were wearing shoes belonging to Sloan when they were arrested. (Resp. Exh. 9, AV4:T 480, 485-86.)

Co-defendant Jennison testified at Lopez's trial. Jennison said he was charged with armed robbery, kidnapping and grand theft auto and he pleaded guilty to the charges and had not received any promises of leniency, any deals, any consideration from law enforcement or the assistant state attorney handling the Lopez case or his own case in exchange for his testimony. (Resp. Exh. 9, AV4:T 522-24.) Jennison entered an open plea on the charges and was due to be sentenced the week after Lopez's trial. (Resp. Exh. 9, AV4:T 523.)

Jennison said he did not know Sloan before he gave them a ride that first night. (Resp. Exh. 9, AV4:T 532-33.) Jennison testified he did not want to maintain a friendship with Sloan, who was openly homosexual, so he and Lopez concocted a plan to steal something from Sloan so that he would not call them anymore. (Resp. Exh. 9, AV4:T 533-36, 560-61.)

While they were at Sloan's apartment, Lopez suddenly hit Sloan and even though this was not part of the original plan, Jennison went along with it. (Resp. Exh. 9, AV4:T 567-68.) Jennison corroborated Sloan's testimony that he was tied up, threatened with the knife, and placed into the bathroom after he and Lopez gathered all the belongings they wanted to take. (Resp. Exh. 9, AV4:T 568- 89.) He said they drove Sloan's car away and Lopez went to several ATM machines and took money out of Sloan's account. (Resp. Exh. 9, AV4:T 591-93.) Jennison said that he and Lopez came up with a story to tell law enforcement in case they

were arrested, which was that the whole thing was an insurance scam and admitted he lied to police when first arrested. (Resp. Exh. 9, AV5:T 626-30, 636.)

The jury found Lopez guilty as charged. (Resp. Exh. 9, R 51- 53.) Lopez was adjudicated guilty and sentenced to life in prison as a prison releasee reoffender on counts one and two, and five years incarceration as a prison releasee reoffender on count three. (Resp. Exh. 9, R 89-97.)

Lopez appealed, arguing, through court-appointed counsel:

I. JUDGE DOWNEY RESTRICTED DEFENSE "CONFRONTATION" AND VIOLATED §90.108'S "RULE OF COMPLETENESS."

II. JUDGE DOWNEY GAVE A MISLEADING AND HIGHLY INACCURATE JURY INSTRUCTION.

(Resp. Exh. 1, initial brief)[2]  On May 25, 2001, the state district court of appeal per curiam affirmed the judgment and conviction in case no. 2D00-520. Lopez v. State, 793 So. 2d 947 (Fla. 2d DCA 2001)[table]. (Resp. Exh. 4, 5.) Rehearing was denied July 24, 2001. (Resp. Exh. 7, 8.) The mandate issued August 14, 2001. (Resp. Exh. 6.)

Lopez, through appellate counsel, filed a petition for writ of certiorari in the United States Supreme Court. (Resp. Exh. 10.) The petition presented the following three questions:

1. Can a state - consistent with Apprendi v. New Jersey and Shafer v. South Carolina[1] - first remove all sentencing discretion from the trial judge, then have a jury impose a mandatory term of life without parole, but [sic] where that jury is never advised of the sentencing implications of its verdict?

2. Can a state - consistent with Apprendi and Shafer - have such a jury impose a mandatory sentence of life without parole, but where that jury is given a standard jury instruction that it's [sic] role is to decide the defendant's guilt, and that it is then the judge's job to "impose a proper sentence"? [emphasis in original]

_____

[2] The answer and reply are exhibits 2 and 3 respectively.

-6-

   3. Can a state impose such a sentence after a trial at which the trial judge: 1) denied the right to cross-examine the co-defendant about matters bearing directly on his credibility, 2) denied the right to confront the complaining witness by asking the investigating detective about statements the witness made in his initial police interview, where the state introduced portions of that interview in the detective's direct examination, and 3) denied the defense attorney's request to proffer the questions he proposed to ask the detective in cross-examination?

   1 520 U.S. 466, 120 S.Ct. 2348 (2000), and 532 U.S. 36, 121 S.Ct. 1263 2001), respectively.

(Resp. Exh. 10.) The petition was denied January 7, 2002. Lopez v. Florida, 534 U.S. 1092

(2002). (Resp. Exh. 11.)

   Lopez filed a pro se motion for postconviction relief dated December 31, 2002, raising

nine grounds for relief.[3]

   On August 11, 2003, the state trial court summarily denied Lopez's rule 3.850 motion.

(Resp. Exh. 155.) The summary order provides, in relevant part:

### Ground One - Ineffective Assistance of Counsel

   Defendant contends that counsel was ineffective in failing to object to standard jury instruction 2.05(5). *[see Exhibit C: Excerpt of Trial Transcript, p. 907].*

   This instruction is approved by the Florida Supreme Court to be used in all criminal jury trials. In re Standard Jury Instructions In Criminal Cases (No. 96-1), 690 So. 2d 1263 (Fla. 1997). As Defendant has failed to show any deficiency on counsel's part or that had counsel objected that there is a reasonable probability that the outcome would have been different, this claim is denied.

### Ground Two - Ineffective Assistance of Counsel

   Defendant contends that counsel was ineffective in failing to object to the court's denial of Defendant's request to proffer testimony. He states that the

---

   [3] Respondent's Exhibit 14 is the motion for postconviction relief, which is also included, with attachments, in Respondent's Exhibit 13, the record of the summary proceedings. Respondent's Exhibit 15 is the trial court's order, without accompanying attachments, which is included with attachments in the summary record of the proceedings in Respondent's Exhibit 13.

codefendant was sexually involved with his boss after the co-defendant denied that he was a homosexual.

The Court did not refuse to permit a proffer of testimony; upon the State's objection, the Court ruled that said defense counsel could not pursue this line of questioning. *[see Exhibit C at pp. 622-624]*. As Defendant does not state what Detective Martin's testimony would be, he has not shown how Detective Martin's testimony is relevant to this claim. Further, section 90.108 is not applicable since this rule permits a party to introduce the remaining portions of written or recorded statements when the other party has introduced a part of the document. The State did not offer the letter into evidence. As this properly preserved issue could and should have been raised on appeal, it is denied.

### Ground Three - Ineffective Assistance of Counsel

Defendant contends that counsel was ineffective in failing to file a motion to suppress his un-<u>Mirandized</u> statements to police.

This claim is facially insufficient and refuted from the record. Although Defendant states that he told his counsel that the sole police officer who heard the confession did not videotape, audiotape, or executed [sic] a written waiver and that he testified at trial that the statements were un-<u>Mirandized</u>, Defendant does not state that he told his counsel before trial that he was not read <u>Miranda</u>. Further, the record refutes the fact that Defendant was not read his <u>Miranda</u> rights. At trial, Defendant testified that he "didn't think" that the detective read him <u>Miranda</u>; whereas the Detective testified that Defendant was read Miranda. [see Exhibit *C at pp. 724 - 726; 765]*. Therefore, this claim is denied.

### Ground Four - Ineffective assistance of Counsel

Defendant contends that counsel was ineffective in failing to impeach the victim's testimony. Specifically, he states that counsel should have asked for a continuance to call the court reporter and Detective Martin to rebut the victim's testimony that he did not testify at a bond hearing that he was stabbed by Defendant.

Even if the court permitted Defendant a continuance for counsel to call the witnesses, which is highly unlikely since this is a collateral matter, there is not a reasonable probability that the outcome of the trial would have been different. The victim testified at trial that Defendant "stabbed at" the victim, which is similar to what Defendant now alleges and denied that any cutting took place. The outcome of the trial hinged on credibility determinations. *[see Exhibit C at pp. 327 - 330]*. Each of the key witnesses - the victim, codefendant (testifying for the State) and the testifying Defendant - were thoroughly questioned regarding multiple inconsistencies in their other statements, the Court cannot

say that any failure to present independent testimony from witnesses that the victim actually said such with regard to this specific inconsistency prejudiced Defendant so as to raise doubt as to the outcome of this case. Therefore, this claim is denied.

### Ground Five - Ineffective Assistance of Counsel

Defendant contends that counsel was deficient in failing to subpoena a copy of the victim's renter's insurance policy.

The victim testified that he did not have insurance to cover the value of his stolen items from his residence and was never reimbursed for such. *[see Exhibit C at pp. 270 - 271].* Further, the detective in charge of the robbery investigation testified that there was no evidence of an insurance scam. *[see Exhibit C at p. 512].* As this claim is conclusively refuted from the record, it is denied.

### Ground Six - Ineffective Assistance of Counsel

Defendant contends that counsel was ineffective in failing to object to remarks made during prosecutor's closing argument.

Counsel was not ineffective in failing to object since the prosecutor's comment in the context of his argument is not improper. *[see Exhibit C at pp. 862 - 865].* This claim is denied.

### Ground Seven - Newly-Discovered Evidence

Defendant contends that he obtained a letter from the co-defendant, Jesse Jennison, in which Mr. Jennison admits to perjuring himself. He attaches an unsworn letter as "Exhibit A" in support of his motion.

Exhibit A does not constitute newly discovered evidence. In order to be entitled to an evidentiary haring based on newly-discovered evidence claim, the allegations supporting the affidavit must be sworn. See Padron v. State, 827 So. 2d 393 (Fla. 2d DCA 2002). The letter submitted in support of his claim is not sworn. Nor has Defendant demonstrated that the purported author Mr. Jennison would recant his trial testimony at said evidentiary hearing, much less at a re-trial. The author never specifically recants any portion of his trial testimony, but only makes a conclusory and vague statements [sic] regarding perjury. As

Defendant has failed to show that the alleged new evidence is of such a nature that it would probably produce an acquittal at trial, this claim is denied. <u>See Jones v. State</u>, 591 So. 2d 911 (Fla. 1991).

### Ground Eight - Ineffective assistance of Counsel

Defendant asserts that counsel was deficient in failing to object to the introduction of State's Exhibit 29 at trial since counsel did not call Mr. Jennison to the stand to question him regarding whether he authored the letter.

Even if counsel had done as Defendant suggests, based on the totality of the evidence introduced at trial, there is not a reasonable probability that the outcome at trial would have been different. The outcome depended on a credibility determination. Both the victim and Mr. Jennison (co-defendant) testified that Defendant and Mr. Jennison robbed the victim; only Defendant testified that Mr. Jennison and himself aided the victim in a [sic] insurance sham with Mr. Jennison testifying that the two contrived the insurance scam story in the event they were arrested. *[see Exhibit C at pp. 211 - 229; 354; 361 - 362; 636 - 638; 701-706].* It is noted that based on Mr. Jennison's testimony, it is unlikely that the witness would admit to writing or dictating the letter since he would be subject to perjury charges. Also, since samples of Mr. Jennison's handwriting was [sic] introduced at trial, the jury members could compare the two handwriting samples. *[see Exhibit C at pp. 747 - 751].* This claim is denied.

### Ground Nine - Ineffective Assistance of Counsel

Defendant contends that counsel was ineffective in failing to object and request a curative instruction to Det. Martin's comments that he believed the robbery occurred and that the victim was telling the truth.

A review of the 71-page trial testimony does not indicate that the detective commented on the victim's credibility. The detective testified that based on his investigation that the events described by the victim took place. *[see Exhibit C at p. 512].* This claim is denied.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED**. .

(Exh. 15.) Lopez appealed the summary order. (Resp. Exh. 12.) On March 19, 2004, the state

district court of appeal per curiam affirmed the denial of relief, in case number 2D03-5250.

(Resp. Exh. 16.) The mandate issued April 13, 2004. (Resp. Exh. 17.)

Lopez filed his certiorari petition within ninety days of denial of rehearing of the silent affirmance in his direct appeal. The United States Supreme Court denied the petition January 7, 2002.  Lopez timely filed his federal petition for writ of habeas corpus. In he amended petition, on which he is proceeding, Lopez raises eleven grounds for relief.  Eight of Lopez's eleven grounds raise claims of ineffective assistance of trial counsel. Grounds one, two, and nine do not raise ineffectiveness claims and will be addressed first.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's two-part test requires a Petitioner to demonstrate that counsel's performance was deficience and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.  However, if a claim fails

to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

The issues have been fully briefed and the case is ready for decision. No evidentiary hearing is necessary because the record is fully developed and the claims of the Petition raise issues of law, not issues of fact. All of the claims lack merit and the Petition will be **DENIED**.

### Ground One

Lopez contends the state trial court "restricted defense confrontation" and violated Florida's "rule of completeness." (Doc. 4 at 5.) In his supporting facts, he contends the state's case rested upon the credibility of two witnesses and that the defense was denied the opportunity to show discrepancies between the trial testimony of the victim, Sloan, and statements made by Sloan to Detective Martin. Though couched in constitutional terms, ground one presents a state law issue for which this Court's subject matter jurisdiction does not lie.

In Florida, the rule of completeness is codified as section 90.108, Florida Statutes. Section 90.108 provides that when a "writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part of any other writing or recorded statement that in fairness ought to be considered contemporaneously." § 90.108, Fla. Stat. (1997); Christopher v. State, 583 So. 2d 642, 645-46 (Fla. 1991). Although the language of the section does not cover testimony regarding part of a conversation, the rule has been applied to conversations as well. See, e.g., Reese v. State, 694 So. 2d 678, 683 (Fla. 1997)(citing, Johnson v. State, 608 So. 2d 4 (Fla. 1992), cert. denied, 508 U.S. 919 (1993)).

In Florida, determination of whether or not a statement is part and parcel of an introduced statement is a matter within the discretion of the state court. See, e.g., Reese, 694 So. 2d at 683-84 ("However, the conversations here were not part and parcel of each other and they occurred several weeks apart. Accordingly, the judge acted within his discretion in ruling that the conversations were properly left for Reese to bring out if Reese chose to call Grier as his own witness. He did not exercise this choice."). Similarly, determination of whether the trial court was within its discretion in limiting cross-examination evidence is solely within the province of the state court. See, e.g., Jones v. State, 580 So. 2d 143, 145 (Fla. 1991)("Trial courts have wide latitude to impose reasonable limits on the scope of cross-examination.")

Federal habeas review is not available to correct state law evidentiary errors; it is limited to violations of constitutional rights. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for habeas relief. Id. at 72 ("Nor do our habeas powers allow us to reverse [a petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case."). On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).[4]   Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. Branan v. Booth,

---

[4] While "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment," Estelle v. Williams, 425 U.S. 501, 503 (1976), the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. Estelle v. McGuire, 502 U.S. at 73.

861 F.2d 1507, 1508 (11th Cir. 1988)(quoting Willeford v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976)).

On direct appeal, Lopez urged the state appellate court to conclude the trial court's evidentiary ruling deprived him of confrontation and violated the state's rule of completeness. The evidentiary ruling, affirmed without written opinion, settles that, as a matter of state law, the trial court was within its discretion to conclude that the proposed cross-examination of Detective Martin was beyond the scope of direct and the state's rule of completeness did not require its admission. See, e.g., Christopher v. State, 583 So. 2d at 646 (trial court does not act inconsistently with rule 90.108 when it excludes testimony based on the requirement that cross-examination "must either relate to credibility or be germane to the matters brought out on direct examination."); § 90.612(2), Fla. Stat. (1999)("Cross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court, may, in its discretion, permit inquiry into additional matters."). The state courts are the final arbiters of Florida evidentiary law; federal courts must respect that law absent a constitutional violation. Breedlove v. Moore, 279 F.3d 952, 963-64 (11th Cir. 2002).

Ground one, treated as exhausted only to the limited extent raised by Lopez on direct appeal as a Sixth Amendment claim (i.e., not his state law arguments) regarding Detective Martin's testimony,[5] does not withstand scrutiny on application of the AEDPA standards. Clearly, the state decision is not "contrary to" Supreme Court precedent. Lopez does not suggest otherwise, and he does not demonstrate that the state court decision resulted in an

---

[5] On direct appeal, Lopez challenged evidentiary rulings concerning proposed cross-examination of codefendant Jesse Jennison and Deputy Williams. (Resp. Exh. 1.)  His federal petition does not advance a confrontation claim with respect to these witnesses.

unreasonable application of clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence.

Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. See Montana v. Egelhoff, 518 U.S. 37, 43 (1996)(quoting Patterson v. New York, 432 U.S. 197, 202 (1977)); see also Spencer v. Texas, 385 U.S. 554, 563-64 (1967). The Supreme Court has rejected the proposition that the Due Process Clause guarantees the right to introduce all relevant evidence. As the Supreme Court has observed, "[t]he accused does not have an  unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Id.  Relevant evidence may, for example, be excluded on account of a defendant's failure to comply with procedural requirements. Montana, 518 U.S. at 42 (citing Michigan v. Lucas, 500 U.S. 145, 151 (1991)). And, the Supreme Court has recognized that any number of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence, such as hearsay rules prohibiting introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable. Montana, 518 U.S. at 42-43.

Furthermore, the Supreme Court has recognized that trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see also Davis v. Alaska, 415 U.S. 308, 316 (1974). The Confrontation Clause generally guarantees only "an opportunity for effective cross-examination." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). It does not guarantee

"cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id.

A defendant's right to present relevant evidence is subject to "reasonable restrictions." United States v. Scheffer, 523 U.S. 303, 308 (1998). In presenting testimony, the defendant must comply with established rules of evidence and procedure as required by the state "to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). While a state may not apply a rule of evidence mechanistically to defeat the ends of justice, in appropriate circumstances, the defendant's right to present relevant testimony may "'bow to accommodate other legitimate interests in the criminal trial process.'" Michigan v. Lucas, 500 U.S. 145, 149 (1991) (internal quotations omitted).

Lopez faults the trial court for restricting his attorney's cross-examination of Detective Martin. At trial, Lopez sought to elicit statements of the victim regarding the events of the night he first met Lopez and the codefendant, Jennison. The trial court concluded the proposed line of inquiry was beyond the scope of direct examination of the officer. On direct appeal, Lopez did not seriously dispute the proposed matters were not covered during the direct examination of the officer, which had focused on the events of the robbery, occurring several days after the initial meeting.

Lopez's petition is devoid of factual allegations which would show he was prevented from eliciting specific discrepancies between the victim's account to police and his trial testimony. In any case, Lopez's counsel was not prohibited from questioning Detective Martin concerning discrepancies in the victim's statements to him about the subject of Detective Martin's direct testimony, which concerned his investigation of the events of the night the

-16-

incident occurred. Review of the trial record bears out the objectively reasonable conclusion that Lopez was given sufficient latitude during cross-examination of the victim and the officer, and effectively utilized such, to explore motive or bias of the state's witnesses.

As he acknowledged on direct appeal, Lopez was able to cross-examine victim Sloan at length. (Resp. Exh. 1.) Lopez was permitted to question Detective Martin regarding the victim's statements relative to the robbery. Further, Lopez was not precluded from calling the officer in the defense's case to adduce the proposed testimony, if shown to be relevant and not collateral impeachment. Lopez simply could not satisfy the state's evidentiary rules for adducing the proposed evidence at the exact time he desired to do so, i.e., during the State's case-in-chief. It is objectively reasonable to conclude the Confrontation Clause did not oblige the trial court to excuse Lopez from compliance with procedural requirements attendant with the proposed impeachment outside the scope of direct examination.

Alternatively, it is objectively reasonable to conclude that any error was harmless in Lopez's case. See Delaware v. Van Arsdall, 475 U.S. at 681-82 (Confrontation Clause violations are subject to a harmless error inquiry). The state court's ruling was not arbitrary or disproportionate to the purpose the state procedural rules governing impeachment were designed to serve.

In addition, it can be reasonably concluded that the proposed impeachment would not materially undercut the State's evidence of Lopez's guilt of the charged crimes. Independent of the victim's account, the state adduced corroborating testimony of the codefendant, which showed Lopez's complicity in the robbery and kidnapping of the victim and theft of his car. In view of the corroborating evidence of the co-defendant's testimony, as well as ample opportunity afforded the defense to confront the victim, it can be objectively concluded that

the state court's decision on the proposed cross-examination of the officer had no "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The focus of this Court's AEDPA inquiry is not on the broad question of whether the state trial court erred in sustaining the state's objection and prohibiting the proposed cross-examination, but, rather, on the limited question of whether the state court decision, followed by the silent affirmance, resulted in an objectively reasonable application of governing Supreme Court precedent. See Yarborough v. Gentry, 540 U.S. 1 (2003)(where state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable). Lopez does not meet his burden under the AEDPA.

Ground one does not warrant federal habeas corpus relief.

Grounds Two and Nine

Lopez contends the trial court gave a misleading jury instruction that violated the United States Constitution when the trial court gave the standard jury instruction 2.05(5), which advised the jury that its duty was determine Lopez's guilt of the charged crimes and the trial court's duty would be to determine the proper sentence upon a finding of guilt by the jury. Lopez points to the State's notice of intent to seek sentencing under Florida's Prison Releasee Reoffender Punishment Act (PRRPA), which sentencing scheme restricts the trial court's discretion in imposing a sentence where the State properly proves the defendant qualifies to be sentenced under the statute. In Lopez's case, since he committed the instant offenses within two weeks of being released from prison, based on the charged offenses, he faced a possible mandatory sentence of life upon conviction.

Ground two, though couched in constitutional terms, presents a state law issue for which federal habeas corpus relief does not lie. Determination of whether an instruction comports with state sentencing law is solely a matter of state law. Moreover, ground two is procedurally barred because Lopez did not preserve any ground for appeal, much less the constitutional dimension of his ground. In Lopez's direct appeal, the State raised the lack-of-preservation bar. The ensuing state appellate court's silent affirmance should be presumed to rest on independent and adequate state procedural grounds, barring review. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir.), cert. denied, 490 U.S. 1071 (1989)("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default"); see also Alderman v. Zant, 22 F.3d 1541, 1550 n.10 (11th Cir.) (collecting cases), cert. denied, 513 U.S. 1061 (1994).

In any case, Lopez did not fairly present a federal question regarding the subject instruction in his direct appeal. Before seeking federal habeas relief, to satisfy the exhaustion requirement, 28 U.S.C. § 2254(b)(1), a state prisoner must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Baldwin v. Reese, 124 S. Ct. 1347, 1349 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365-66 (1995)(per curiam); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Lopez's state law arguments did not suffice to exhaust. 30 a federal claim. See Duncan v. Henry, 513 U.S. 364 (1995)(mere similarity of claims is insufficient for exhaustion).

Because Lopez could, if at all, have preserved and raised a federal constitutional claim regarding the jury instruction on direct appeal, he was precluded from doing so collaterally in

a rule 3.850 motion.[6] This Circuit has long recognized this aspect of Florida law. Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir.)(claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), cert. denied, 464 U.S. 922 (1983); Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir.), cert. denied, 498 U.S. 832 (1990)(under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent", as contemplated in Murray v. Carrier, 477 U.S. 478 (1986). Cause must ordinarily be something external to the defense, Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

Lopez has not alleged cause to excuse his default in state court and any "cause" allegation is barred by the two-year limitation period governing a rule 3.850 motion, see Whiddon v. Dugger, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), cert. denied, 498 U.S. 834, (1990)), the two-year limitation period governing state habeas petitions in Florida Rule of Appellate Procedure 9.141(c)(4), as well as the state's

---

[6] Although presented as a federal question in his petition for writ of certiorari to the United States Supreme Court, that does not overcome his failure to have presented the constitutional claim to the state courts at any time.

successive petition doctrine. See e.g., Foster v. State, 614 So. 2d 455, 458 (Fla. 1992);

Zeigler v. State, 632 So. 2d 48, 51 (Fla. 1993). In addition, Lopez does not meet the prejudice

or fundamental miscarriage of justice exceptions to lift the state procedural bar. He does not

suggest the existence of new and reliable evidence of actual innocence. See Schlup v. Delo,

513 U.S. 298, 321 (1995).[7]

In Lopez's direct appeal, he urged for the first time that the instruction as to the judge's

job to determine the proper sentence  was misleading and deprived him of a jury pardon. To

the extent he relies upon his state law arguments, and even if the state decision in Lopez's

direct appeal is treated as resting on state substantive, rather than procedural grounds, such

conclusion would end any inquiry into whether the instruction was proper under state law.

See, e.g., Broughton v. State, 790 So. 2d 1118 (Fla. 2d DCA 2001)(instruction stating it was

jury's duty to determine if defendant had been proven guilty or not in accord with law, and that

it was judge's job to determine a proper sentence if defendant is guilty, was not misleading

in case in which state sought prison releasee reoffender (PRR) status; jury instruction

appropriately reiterated evolving policy of removing from noncapital jury any knowledge of

potential penalties for crimes which defendant is charged). The state procedural or substantive

grounds constitute an independent and adequate basis to deny ground two of Lopez's petition.

See Eagle v. Linahan, 279 F.3d 926, 936 (11th Cir. 2001)(federal court will not review a

question of federal law decided by a state court if the decision of that court rests on a state

law ground that is independent of the federal question and adequate to support the judgment;

---

[7] In  ground nine, Lopez raises a claim of actual innocence based on alleged newly-discovered evidence. He does not urge such as a basis to lift the bar attendant ground two. Even if he were to so allege, Lopez does not make a threshold showing under Schlup to inquire further into the manifest injustice exception.

rule applies whether the state law ground is substantive or procedural, citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)).

Further and alternatively, Lopez does not meet his burden under the AEDPA with regard to the state decision on his instruction issue. Errors in jury instructions normally do not give rise to a federal constitutional question unless the errors so infect the trial as to render the whole proceeding unfair. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991). In <u>Agan v. Vaughn</u>, 119 F.3d 1538 (11th Cir. 1997), the Eleventh Circuit explained:

> As a federal court of appeals, we do not have the final say on what instructions a bribery charge must contain in order to accurately state Georgia law. That is the purview of the Georgia Supreme Court, which already has decided that Agan's jury charge correctly and adequately explained the State's bribery statute. See <u>Agan</u>, 384 S.E.2d at 865-67. Our limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process. <u>See Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir.1983). In making that determination, we do not judge portions of the jury charge, or even the entire charge, standing alone. A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1290 (11th Cir. 1992).

<u>Id.</u> at 1545.

Even if an instruction is held to be constitutionally deficient, such instruction does not lead to automatic reversal of a conviction, for it is subject to harmless-error analysis. <u>See Neder v. United States</u>, 527 U.S. 1 (1999)(holding that the omission of an element from a jury instruction is not structural error and thus is subject to harmless-error analysis); <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)(per curiam)(applying harmless-error analysis to an erroneous state first-degree murder instruction).

In Lopez's case, it is objectively reasonable to conclude no constitutional error is implicated in giving his jury the standard instruction regarding the role of the judge and jury. As the state court observed in <u>Broughton</u>, even though the state may decide to proceed under the Prison Releasee Reoffender Punishment Act, the trial court must still determine if the state has met its burden to prove that a defendant qualifies for that designation. <u>Broughton</u>, 790 So. 2d at 1119.

Moreover, a properly charged jury may acquit or convict of a lesser crime, in which case the Prison Releasee Reoffender Punishment Act designation may become a moot point. <u>Id.</u> Accordingly, it can be reasonably concluded that the jury was not misled by the instruction. Moreover, any claimed error was harmless. When viewed in light of the entire trial, it is objectively reasonable to conclude the instruction was not so misleading as to make the trial unfair.

In his direct appeal, Lopez urged that a jury pardon is the right to be convicted of a lesser offense. Lopez also proposed that the jury had to be instructed that he was facing a life sentence if convicted as charged, so that the jury could exercise its pardon power. However, there is no constitutional right to a pardon. E.g., <u>Lages v. State</u>, 640 So. 2d 151 (Fla. 2d DCA 1994). Nor is there any right to have the jury instructed as to its. inherent pardon power. As stated in <u>United States v. Trujillo</u>, 714 F.2d 102 (11th Cir. 1983):

> In arguing the law to the jury, counsel is confined to principles that will later be incorporated and charged to the jury. The jury in this case was properly instructed on their duty to follow the law as stated in the jury instruction. Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.

<u>Id.</u> at 706 (citation and footnote omitted).

There is no established Supreme Court precedent holding that an instruction such as given Lopez's jury would operate to deprive a state prisoner of a fair trial. Lopez's jury was afforded the opportunity to return a verdict on instructed lesser included offenses, but found Lopez guilty as charged. Given the evidence adduced by the State, which established Lopez's guilt of the charged offenses beyond a reasonable doubt, it is objectively reasonable to conclude that any claimed instructional error regarding the judge's sentencing responsibility did not have a substantial and injurious effect or influence on the jury's verdict. Brecht, supra.

In ground nine, Lopez raises a claim of newly-discovered evidence. In his supporting facts, he contends that co-defendant Jennison in a letter admitted to committing perjury in his testimony at Lopez's trial.[8] Lopez contends that the letter, received post-trial, entitled him to an evidentiary hearing in state court or a new trial.

Florida applies a two-prong test to a claim of newly-discovered evidence. See Jones v. State, 591 So. 2d 911, 915 (Fla. 1991). Whether or not a Florida prisoner satisfies Florida's rules governing a claim of newly-discovered evidence is solely a state law matter.       A state prisoner is entitled to relief under section 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. Wainwright v. Goode, 464 U.S. 78 (1983). The writ of habeas corpus was not enacted to enforce state-created rights. Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition that actually involves state law issues is "couched in terms of equal protection

---

[8] The subject letter is found in Respondent's Exhibit 13 as Exhibit A attached to Lopez's Motion for Postconviction Relief.

and due process," this limitation on federal habeas corpus review is of equal force. See Willeford v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Lopez's allegation, framed in constitutional terms, that an evidentiary hearing should have been held in his postconviction proceeding to determine if new evidence would require a new trial, (Doc. 4 at 9), does not state a cognizable basis for federal habeas corpus relief. Determination of whether a state prisoner in.  Florida should be afforded an evidentiary hearing on a state postconviction motion claiming the existence of newly-discovered evidence is solely within the province of the Florida courts. See Spradley v. Dugger, 825 F.2d 1566 (11th Cir. 1987)(state court's failure to hold a hearing on inmate's motion for postconviction relief and failure to attach relevant portions of the record did not undermine validity of inmate's conviction, went to issues unrelated to cause of detention, and did not state basis for habeas corpus relief).[9]

Lopez claims that a letter received post-trial from his codefendant supports his claim that he was convicted for crimes he did not commit. However, none of his assertions furnishes a basis for federal review. Federal habeas courts sit  to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. Herrera v. Collins, 506 U.S. 390, 400 (1993). Free-standing claims of actual innocence based on newly-discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Id. at 400.

---

[9] The weight of authority holds that errors in state postconviction proceedings are not addressable in federal habeas corpus actions. See Franzen v. Brinkman, 877 F. 2d 26 (9th Cir.), cert. denied, 110 S. Ct. 574 (1990), and cases cited.

A claim of innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have an otherwise barred constitutional claim considered on the merits. Schlup v. Delo, 513 U.S. 298 (1995). In order to avail himself of Schlup, a petitioner must first "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Id. at 324. The petitioner must then demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

Here, Lopez does not seek to excuse a procedural default so that he may bring a defaulted constitutional claim challenging his conviction or sentence. Rather, he seeks habeas relief on the premise that newly-discovered evidence shows his conviction is factually incorrect. Lopez is not entitled to federal review of such a claim.

Additionally, Lopez defaulted his ground by not raising the constitutional dimension of his newly-discovered evidence claim in his rule 3.850 motion. His state law claim of newly-discovered evidence does not suffice to exhaust a federal claim. Duncan v. Henry, 513 U.S. 364 (1995). To satisfy the exhaustion requirement before seeking federal habeas relief, a state prisoner must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature. Baldwin v. Reese, 124 S. Ct. 1347 (2004). Without specifically preserving the constitutional dimension of his claim of newly-discovered evidence in his rule 3.850 motion, Lopez deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent", as contemplated in <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). Cause must ordinarily be something external to the defense. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995).

Lopez frames his claim in terms of perjured testimony. But, he does not raise a constitutional claim that the State knowingly used perjured testimony. Even if Lopez were now to identify a defaulted federal claim and then urge cause to excuse his default, any such "cause" allegation is itself now procedurally barred. <u>See Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

Lopez raised a state law claim of newly-discovered evidence, and the state postconviction court expressly found that he did not meet the rules governing newly-discovered evidence and the state district court affirmed without written opinion. If and to the extent Lopez relies on his newly-discovered evidence allegations as "cause" to excuse default of any federal claim, the summary denial of Lopez's rule 3.850 motion followed by the silent affirmance rests on independent and adequate procedural grounds, barring federal habeas corpus review. <u>See Harmon v. Barton</u>, 894 F.2d 1268, 1270 (11th Cir.)(where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by the last state court to rule on the question), <u>cert. denied</u>, 498 U.S. 832 (1990). A federal court declines to secondguess a state on the application of its own procedural default

rules. See Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)(rejecting contention that court could make an independent review of whether state had correctly applied its procedural default rule).[10]

Furthermore, Lopez did not show valid cause in state court to excuse a default of a constitutional claim. Lopez, therefore, has failed to overcome his procedural default of any such federal claim under Wainwright v. Sykes. Even if Lopez could present requisite cause to excuse his default [not conceded], he would still have failed to overcome his procedural default of any constitutional claim because he does not show that there as actual prejudice and does not make out a colorable claim of actual innocence. To the extent Lopez promotes a free-standing claim of actual innocence, he cannot show that the state decision was contrary to Herrera.[11] Lopez does not make a threshold showing of entitlement to a federal evidentiary probe because his free-standing claim of actual innocence premised upon newly-discovered evidence is not a cognizable claim for federal relief.

Recently, in Sibley v. Culliver, 377 F.3d 1196 (11th Cir. 2004), on appeal of a time-bar order applying the AEDPA statute of limitations, the Eleventh Circuit noted that some courts have applied section 2254(e)(2) in determining when a petitioner is eligible for an evidentiary

---

[10]Even if the state postconviction decision is regarded as an alternative ruling, it should be presumed to rest on the procedural grounds. See Alderman v. Zant, 22 F.3d 1541, 1550 n.10 (11th Cir.)(collecting cases), cert. denied, 513 U.S. 1061 (1994).

[11] See also Stuckey v. Kirby, 2000 U.S. Dist. LEXIS 20633 (D. W. Va. 2000)(because federal habeas relief exists to correct constitutional defects, not factual errors, claims of actual innocence based on newly-discovered evidence have never been held to state a ground for federal habeas relief absent independent constitutional violation occurring in underlying state criminal proceeding).

hearing on his actual innocence contention.[12] In addressing the applicability of section 2254(e)(2), the Eleventh Circuit stated:

> We do not believe this provision governs the availability of evidentiary hearings when petitioners seek to introduce evidence concerning actual innocence. By its own terms, § 2254(e) applies only where a petitioner "has failed to develop the factual basis of a claim in State court." The term "claim" appears to refer to the  substantive claim for relief upon which the petition for habeas corpus is based. *See, e.g.*, 28 U.S.C. § 2254(d) (limiting the circumstances under which "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall ... be granted with respect to any *claim* that was adjudicated on the merits in State court") (emphasis added). This case involves a petitioner who wishes to adduce additional facts to support his allegation of actual innocence. While we have referred to that allegation throughout this opinion as a "claim of actual innocence," it is not a "claim" for purposes of § 2254. An actual innocence allegation is, instead, a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993).

Id. at n.9.

Lopez seeks a factual redetermination of his guilt, which does not constitute a claim for habeas relief, as the notation in Sibley illustrates. Because a claim of actual innocence is not a substantive claim, Lopez is not entitled a federal probe into his claim of newly-discovered evidence.

---

[12] That section states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

> (A) the claim relies on--

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Even if a free-standing claim of actual innocence by a noncapital defendant such as Lopez is deemed cognizable, any such claim by Lopez fails. To prevail on such a claim, a petitioner is held to an "extraordinarily high" standard. Herrera, 506 U.S. at 426. The petitioner must show new facts unquestionably establishing his innocence. Schlup, 513 U.S. at 317.

Here, even accepted at face value, the Jennison letter does not meet the standard articulated in Schlup for making a finding of actual innocence. The factual allegations upon which Lopez relies do not undermine confidence in his guilt. Based on the present record, as well as the allegations in the letter, it is objectively reasonable to conclude Lopez does not make a threshold showing under the Schlup standard of actual innocence and, thus, is not entitled to a federal probe of his section 2254 claim.

Post-verdict, Lopez stands not as a presumptively innocent person, but a person who is conclusively guilty. Schlup, 513 U.S. at 326, n.42 ("Having been convicted by a jury of a capital offense, Schlup no longer has the benefit of the presumption of innocence."). Here, Lopez does not allege new, reliable facts unquestionably establishing his innocence as contemplated by Schlup.

In Sibley, the Eleventh Circuit recognized the timing of a submission is relevant, as well as likely credibility of witnesses. The letter attributed to Jennison is inherently suspect given, among other things, it is unsworn, as noted by the postconviction court, and stands in contrast to the reliability of the victim's sworn eyewitness testimony at trial. As the postconviction court noted, Jennison did not specifically recant any portion of his trial testimony. It is objectively reasonable to conclude that this unsworn offering does not begin to make out a colorable showing under Schlup.

Not establishing that a free-standing actual innocence claim based on asserted newly-discovered evidence is cognizable on habeas review, and, in any case, not meeting the extraordinarily high standard which would apply, Lopez is left with <u>Herrera</u>, that is: federal habeas does not lie for errors of fact. Under that analysis, the postconviction court's decision summarily denying Lopez's newly-discovered evidence claim, followed by silent affirmance, resulted in a reasonable application of established Supreme Court precedent and a reasonable determination of the facts in light of the evidence and this ground should be denied.

Grounds two and nine do not warrant habeas corpus relief.

Grounds Three Through Eight, Ten and Eleven

Lopez raises numerous proposed instances of ineffective assistance of his trial counsel. Lopez fails to make out a threshold showing of entitlement to relief under 28 U.S.C. sections 2254(d) and (e). As previously stated, on federal habeas review, the focus of this Court's AEDPA inquiry is not on the broad question of whether or not denial of Lopez's claims of ineffectiveness of counsel was erroneous. Rather, the limited inquiry under the AEDPA in this federal habeas corpus proceeding is whether the state decision resulted in an objectively reasonable application of the governing Supreme Court precedent. <u>See Yarborough v. Gentry</u>, 540 U.S. 1 (2003)(where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable).

The applicable Supreme Court precedent governing Lopez's claims of ineffective assistance of counsel is the benchmark case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In denying Lopez's claims, the state postconviction court applied the Strickland standard, and Lopez's federal petition does not show that the state decision resulted in an

unreasonable application of Strickland or an unreasonable determination of the facts in light of the evidence. Lopez does not allege that the state courts reached an opposite conclusion from the Supreme Court on a question of law. Further, he does not allege there is a decision in which the United States Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in this case. Therefore, the state court's decision was not "contrary to" clearly established federal law as determined by the United States Supreme Court and Lopez is not entitled to relief.

Ground Three

Lopez contends his trial counsel was ineffective for not objecting to the standard instruction 2.05(5) because it misled the jury into believing "the judge had some pardoning power in regards to the sentence that might be imposed if they made a finding of guilt." (Doc. 4 at 6.) Florida standard instruction 2.05(5) advises the jurors, "Your duty is to determine if the defendant has been proven guilty . . . It is then my job to determine what a proper sentence would be when you find that he is guilty." He contends this standard instruction was misleading in his case because the State had filed a notice of intent to seek enhanced sanctions under the Prison Releasee Reoffender Punishment Act, under which his sentencing exposure was life in prison.

The underlying substantive issue regarding the use of the standard jury instruction at trial was raised by Lopez on appeal and the State asserted the argument was procedurally barred. However, the State also pointed out that the newly objected-to instruction was not error at all, since Florida Rule of Criminal Procedure 3.390(a) prohibits the jury being instructed on the possible penalties faced by a defendant upon conviction, and the Florida Supreme Court has rejected the analogous argument that the jury should be instructed that

the defendant faced mandatory penalties in the event the jury found he used a firearm during commission of the offense for which he was being tried. Knight v. State, 668 So. 2d 596, 597 (Fla. 1996).

On appeal, the State expressly asserted that the instruction did not constitute fundamental error, which a state appellate court may address on direct appeal in the absence of an objection by the trial attorney. The silent affirmance settles that under state law, the instruction did not rise to fundamental error. Thus, Lopez did not show that trial counsel overlooked any viable claim of error, fundamental or otherwise.

At least one reasonably competent attorney could conclude the instruction was properly given because it was a standard instruction approved for use in all criminal jury trials by the Florida Supreme Court. Thus, it was objectively reasonable for the postconviction court to find there was no deficient performance.

The state court also reasonably concluded there was not showing of prejudice by Lopez that, had counsel objected, there is a reasonable probability that the outcome would have been different. (Resp. Exh. 15 at 2.) Lopez does not show the state court was obliged to conclude the instruction was misleading in any regard. Indeed, after Lopez's appeal, in Broughton v. State, 790 So. 2d 1118 (Fla. 2d DCA 2001), the state appellate court approved the use of the standard jury instruction in question and rejected the argument that it was misleading where the state sought prison releasee reoffender sanctions.

Accordingly, it can be objectively concluded Lopez has not demonstrated either deficient performance or resulting prejudice. Therefore, the state court decision denying relief resulted in an objectively reasonable application of the governing Strickland standard.

Ground three does not warrant federal habeas corpus relief.

Ground Four

Lopez contends that his attorney was ineffective for failing to "object to a violation of the confrontation clause rule of completeness." (Doc. 4 at 6.) He contends that the failure to object precluded the state appellate court from considering the issue on appeal. Lopez raised the substantive claim on appeal, (Resp. Exh. 1), and the State did not assert in its answer brief that the issue had not been preserved. Rather, the State argued the merits of the issue, asserting that the trial court's actions were proper since the prosecutor limited Detective Martin's direct testimony to events occurring only on the night of the incident and, on direct, the officer had not been asked questions related to what he discovered about the events of several days before. (Resp. Exh. 2.) Since Lopez desired to ask the detective about the victim's report of events occurring several days before the incident occurred, the trial court properly determined the attempted area of cross-examination was beyond the scope of direct. (Resp. Exh. 2.)

Because Lopez's claim is dependent upon an underlying state law claim resolved adversely to him by the state court, he cannot show any deficiency in counsel's performance regarding the underlying state law arguments. Moreover, he does not allege and show that counsel overlooked any viable confrontation argument.

In the postconviction motion and this federal habeas petition, Lopez also fails to satisfy the Strickland prejudice prong because he does not show what information counsel would have elicited from Detective Martin and what impact that information would have with respect to impeaching the victim. See Aldrich v. Wainwright, 777 F.2d 630 (11th Cir. 1985)(Strickland's prejudice requirement is never satisfied where petitioner fails to indicate what information defense counsel should have discovered and what impact such information

would have had on impeachment of state witnesses); see also White v. Singletary, 972 F.2d 1218 (11th Cir. 1992)(same).

Lopez's counsel vehemently, and repeatedly, objected to the perceived limitation of his cross-examination of Detective Martin, and he also argued he was entitled to pursue the proposed line of questioning due to the "rule of completeness." Therefore, the complained-of failure to preserve this issue through lack of objection did not occur. Moreover, the preserved issue was found to be without merit on direct appeal. Lopez thus fails to show either deficient performance or prejudice under Strickland and is not entitled to relief on this ground. Cf. Chandler v. Moore, 240 F.3d 907, 916 (11th Cir. 2001)("Chandler cannot prevail on his claims of ineffective assistance related to this comment. The record shows that Chandler's counsel did object to the comment, and appellate counsel raised the issue on appeal.").

Ground four does not warrant federal habeas corpus relief.

### Ground Five

Lopez contends his trial attorney was ineffective for not filing a motion to suppress or a motion in limine to prevent detectives from commenting on "alleged incriminating statements" made by Lopez to police. (Doc. 4 at 8.) Lopez states "this evidence was the State's primary evidence used to obtain a conviction." (Doc. 4 at 8.)

Lopez's claim is devoid of any factual underpinnings. His conclusory allegations do make out a threshold showing under the AEDPA. To the extent Lopez intends this claim to mirror that raised in his rule 3.850 petition, and even if such is treated as exhausted only to that extent, Lopez does not meet the AEDPA standard.

In his rule 3.850 motion, Lopez asserted his trial attorney was ineffective for failing to move to suppress his statement made to Detective Martin at the time of his arrest on the

theory he had not been advised of his Miranda[13] rights and not given the opportunity to request an attorney. (Resp. Exh. 14 at 7-8.) Lopez alleged he made his counsel aware of the circumstances surrounding his confession and Detective Martin's decision not to videotape or audiotape the interrogation, or obtain a written waiver form and the fact that the statement was not witnessed by anyone else, was "immeasurable evidence that would have supported suppression of the alleged confession . . . ." (Resp. Exh. 14 at 8.)

The postconviction court determined this claim was facially insufficient and also refuted by the record. (Resp. Exh. 15 at 2- 3.) The postconviction court stated Lopez did not assert that he advised his attorney before trial that he had not been given his Miranda warnings when questioned. (Resp. Exh. 15 at 2.) In addition, the postconviction court found the record refuted the claim that Lopez was not read his Miranda rights because Detective Martin testified that he did read them to Lopez. (Resp. Exh. 15 at 3.) Moreover, the postconviction court found Lopez's trial testimony was not conclusive on the issue; rather, the record showed Lopez testified he "didn't think" the detective read him Miranda. (Resp. Exh. 15 at 2-3.)

Lopez does not dispute the state court's findings or endeavor to show that the state court's decision is an unreasonable determination of facts in light of the evidence. Lest he so allege, Lopez could not so demonstrate. At trial, Lopez testified only that he "does not remember" Detective Martin's reading him his Miranda rights. (Resp. Exh. 9, AV5:T 712.) That testimony is not an unequivocal assertion that he was not given his Miranda rights. Further, Detective Martin in rebuttal stated unequivocally that he did read Lopez his Miranda rights and

---

[13]Miranda v. Arizona, 384 U.S. 436 (1966).

Lopez understood them, agreed to waive them and to talk with him, and never asked for an attorney. (Resp. Exh. 9, AV6:T 761-65.)

At least one reasonably competent attorney could have elected to forego filing a motion to suppress under the circumstances. Lopez does not show there was an overlooked, viable basis for raising an alleged <u>Miranda</u> violation.

Lopez's claim can be disposed of on the prejudice prong. It is objectively reasonable to conclude that had counsel filed the proposed motion, there was no reasonable probability the statement would have been excluded. <u>Cf. Routly v. Singletary</u>, 33 F.3d 1279, 1288 (11th Cir. 1994)("Routly has failed to demonstrate that there is a reasonable probability that, if counsel had objected, the confession would have been excluded.").

Additionally, the proposed motion would not have precluded the State from using Lopez's statement to impeach him at trial. Lopez's statement to Detective Martin was not used at trial until Lopez testified on direct in a manner grossly inconsistent with his statement to Detective Martin. On direct, Lopez testified that Sloan had drugged him and victimized him, he believed in a sexual way (but he was not sure), and that Sloan came up with the idea of giving Lopez and Jennison his ATM card so they could collect payment for the sexual services Sloan may or may not have received from Lopez, and said he would call it in as a robbery so he could be reimbursed from his bank. (Resp. Exh. 9, AV5:T 688-91, 693-705, 732-33.) Further, Lopez adamantly denied telling Detective Martin his and Jennison's "cover story" about an insurance scam, and also maintained that he had told the jury the same story he gave Detective Martin when he was interrogated. (Resp. Exh. 9, AV5:T 732, 735-38.)

The State called Detective Martin to rebut Lopez's assertions, bringing out that Lopez had never mentioned any alleged sexual impropriety by Sloan, and that Lopez had, indeed,

told Detective Martin that Sloan himself came up with the idea of perpetrating an insurance scam by making it look as if he had been robbed. (Resp. Exh. 9, AV6:T 768-75.) Because Lopez's statement was used only for impeachment purposes, even if Lopez could make out a Miranda violation occurred, Lopez cannot demonstrate prejudice based on his attorney's not making a motion to suppress because the United States Supreme Court has held that statements taken in violation of the prophylactic rule of Miranda are admissible to impeach conflicting testimony by the defendant. See, e.g., Harris v. New York, 401 U.S. 222 (1971). Therefore, even if the facts were as claimed by Lopez, i.e., that he did not receive Miranda warnings and his attorney should have moved to exclude his statement on that ground, Lopez was not prejudiced under Strickland because the statement was admissible as impeachment.

Lopez's claim of prejudice is that his statement to Detective Martin was the primary evidence used to convict him. However, that assertion is not supported by the record, which reveals the victim, Sloan, unequivocally testified Lopez and Jennison tied him up, robbed him of various items of personal property taken by the two from his apartment, and put him in the bathroom of his apartment, leaving the water running to mask any attempt he made to attract attention to his plight as they made their way from the scene in his car. Sloan's account was corroborated in material respects by Jennison's testimony that he and Lopez committed these offenses. In view of this evidence, which established Lopez's guilt of the charged crimes beyond a reasonable doubt, independent of any statement by Lopez, it is objectively reasonable to conclude Lopez cannot show there was a reasonable probability of a different outcome in his case, had the proposed motion had been made.

Based on the record, it can be objectively concluded that there was neither deficient performance nor resulting prejudice with regard to Lopez's statement to Detective Martin.

Accordingly, the state decision resulted in a reasonable application of <u>Strickland</u> and a reasonable determination of the facts in light of the record.

Ground five does not warrant habeas corpus relief.

### Ground Six

Lopez maintains his attorney was ineffective for failing to ask for a continuance or failing to call either the court stenographer or Detective Martin to contradict the victim's testimony at trial that he did not recall saying at the bond hearing he was stabbed repeatedly. (Doc. 4 at 8.) In support, he asserts the victim testified at trial that he was not stabbed, rather he was "stabbed at," and when asked about the difference in his bond hearing testimony, the victim said the stenographer did not accurately record his statement. (Doc. 4 at 8.)

The postconviction court concluded it was unlikely the trial court would have granted a request for such a continuance because the issue concerned a collateral matter. (Resp. Exh. 15 at 3.) Moreover, because the victim testified at trial only that he was "stabbed at[,]" the postconviction court concluded that the outcome of the trial would not have been different even the proposed witnesses been called. (Resp. Exh. 15 at 3.) The postconviction court explained that the witnesses were thoroughly questioned at trial regarding multiple inconsistencies in each of their statements such that any failure to present a witness to testify with regard to this specific inconsistency did not raise doubt as to the outcome of this case. (Resp. Exh. 15 at 3.) The postconviction court's decision on this ground resulted a reasonable determination of the facts in light of the evidence and a reasonable application of <u>Strickland</u> under either prong.

The state record demonstrates that Lopez's attorney had a transcript of Sloan's testimony from Lopez's bond hearing, which reflected that Sloan said he was stabbed

numerous times and still had the scars to prove it. At trial, however, Sloan testified that he was only "stabbed at", with the knife blade going into the mattress and not cutting him. Lopez's attorney spent a significant amount of cross-examination time impeaching Sloan with this prior inconsistent statement. (Resp. Exh. 9, AV3:T 326-30.) Lopez has failed to establish the deficiency prong of Strickland because it can be objectively concluded that at least one reasonably competent attorney could have determined that the impeachment that was done at trial during cross-examination was adequate without resort to putting on independent witnesses, as now proposed by Lopez. See, e.g., Routly v. Singletary, 33 F.3d 1279, 1289 (11th Cir. 1994)("When viewed in its totality, counsel's cross-examination of O'Brien concerning these matters was more than adequate. It is fair to say that counsel illuminated for the jury any inconsistency in her testimony and adequately explored any bias or motivation she might have had in testifying for the prosecution."). Further, the record also shows counsel vigorously argued the point during closing, pointing out the differences in Sloan's bond hearing and trial testimony. (Resp. Exh. 9, AV6:T 876-78.)

Lopez merely speculates that, in fact, the court reporter and Detective Martin would have independent recall of Sloan's testimony at the bond hearing separate and apart from the actual transcript. Lopez did not point to any objective facts to show that the proposed witnesses would have testified as he speculates they might. Lopez cannot establish deficient performance or prejudice based on mere speculation the proposed witnesses might have questioned the transcription.

As pointed out by the postconviction court, each witness was thoroughly and vigorously cross-examined as to inconsistencies in their statements and accounts of events. In light of the victim's trial testimony, which unequivocally established the robbery and kidnapping

occurred, and the corroborating testimony of the codefendant, it is objectively reasonable to conclude there was no reasonable probability that the suggested alternative method of impeachment of the victim would have changed the outcome of the trial. Because the state decision resulted in a reasonable application of <u>Strickland</u> under the prejudice prong and a reasonable determination of the facts in light of the record, Lopez is not entitled to habeas corpus relief on this ground.

Lopez asserts his attorney was ineffective for not investigating and obtaining information on the victim's home or renter's insurance policy. (Doc. 4 at 8.) Lopez asserts his defense was that the entire incident was an insurance scam perpetrated by the victim with the help of Lopez and Jennison. (Doc. 4 at 8.) The state postconviction court denied the claim, pointing to the victim's testimony which revealed the victim did not have insurance to cover the value of the items stolen from his residence and that he was never reimbursed for them, and the testimony of the detective in charge of the robbery investigation, that there was no evidence of an insurance scam. (Resp. Exh. 15 at 3.)

As found by the postconviction court, the victim testified there was no insurance scam and that he had no insurance. (Resp. Exh. (Resp. Exh. 9, AV2:T 271, AV3:T 361.) Further, co-defendant Jennison testified the insurance scam idea was a story he and Lopez concocted to tell law enforcement if they were arrested. (Resp. Exh. 9, AV5:T 626-30, 636.)

In addition, during his own testimony, Lopez denied that there was any talk of an insurance scam regarding the contents of the apartment. Asked by defense counsel, "at the apartment did you-all talk about what would happen as far as Shawn's insurance," Lopez responded:

> **LOPEZ**: No, because there was nothing really taken. I mean, he didn't really state -- just basically it was just the ATM card, that he would get reimbursed for the ATM card. He didn't say that -- you know, anything that was taken out of the apartment. He didn't really say that he was going to say all of this stuff got stolen out of his apartment.
>
> Basically, we were just -- we thought we were just covering up for the ATM card, not for all of the other stuff that he claimed. We just, basically, you know, that we came into his house and looked for money, couldn't find no money and took his ATM card, I guess. He didn't say how he was going to say they got the number or anything like that.

(Resp. Exh. 9, AV5:T 717-18.) Then, on cross-examination, the following exchange took

place:

> **STATE**: Now, let's get to this insurance stuff. Isn't it true you told Detective Martin that -- this is the second night. You are over there now, the second night, at Shawn Sloan's apartment. Now, this whole topic of insurance fraud came up at some point even with Shawn Sloan?
>
> **LOPEZ**: I wouldn't necessarily say it was an insurance scam. I wouldn't say that. I would say that we were looking for a way to cover up the fact that he got his ATM card took. There was no discussion about the house, you know, all this stuff that he said got stolen, about him getting compensated for that or him being compensated for the car. No. That didn't come up with the detective, no.
>
> **STATE**: Isn't it true though that you told Detective Martin that the victim basically wanted to rip off his homeowner's insurance, and part of the plan was to steal various items from his property?
>
> **LOPEZ**: No, sir. That's not true at all.
>
> **STATE**: That's not true? You never said that to Detective Martin?
>
> **LOPEZ**: No, I did not. I did not.
>
> **STATE**: Isn't it true that you told Detective Martin that you had -- this is what you said to Detective Martin, that you, back on that night, told the victim that you've been involved in damaging cars and stolen cars for a fee as part of the an [sic] insurance scam in the past?
>
> **LOPEZ**: No.

**STATE:** You never said that?

 **LOPEZ**: No.

**STATE:** And then that is when Shawn Sloan asked you if it was possible if a similar type scam could be done on his residence. That never happened?

**LOPEZ**: No, sir.

**STATE:** You never said that to Detective Martin?

**LOPEZ**: No.

**STATE:** And Shawn Sloan never said that to you?

**LOPEZ**: No.

(Resp. Exh. 9, AV5:T 735-38.)

In view of Lopez's trial denial of any insurance scam, it is reasonable to conclude that counsel was not constitutionally obliged to pursue the matter of insurance in order to be reasonably effective. Moreover, Lopez does not set forth a sufficient basis to conclude counsel overlooked a viable avenue for impeaching the victim's testimony with evidence of a renter's insurance policy.

As pointed out in <u>Strickland</u>, the reasonableness of counsel's actions may be influenced by the defendant's own statements or actions. <u>Strickland</u>, 466 U.S. at 691. It is objectively reasonable to conclude that, had Lopez's counsel acted as proposed, there was no reasonable probability of a different outcome as such evidence would have contradicted Lopez's own testimony and, possibly, served to undermine such. Accordingly, the state postconviction court's decision on this ground was a reasonable application of <u>Strickland</u> and a reasonable determination of the facts in light of the evidence.

Ground six does not warrant habeas corpus relief.

Ground Eight

Lopez contends his trial attorney was ineffective for failing to object to a claimed misstatement of reasonable doubt by the prosecutor. This ground is conclusory, lacking factual specificity. Lopez's claim, even if treated as exhausted only to the extent raised in his rule 3.850 application, fails scrutiny under the AEDPA.

Lopez contended in his 3.850 motion his attorney was ineffective for not objecting to the following comments by the prosecutor:

> "When you stop and look at the inconsistencies, which there is always reasonable doubt -- yeah, there is no perfect case." (T-863).

(Resp. Exh. 14 at 12.) As well as the additional comment, "Every inconsistency is a reasonable doubt." (Resp. Exh. 14 at 12.) Lopez asserted these remarks were designed to mislead the jury that reasonable doubt was present in every case, but the jury could still reach a guilty verdict. (Resp. Exh. 14 at 12.) In denying Lopez's relief on this ground, the postconviction court found that "the prosecutor's comment in the context of his argument [was] not improper." (Resp. Exh. 15 at 3.)

It is objectively reasonable to conclude that the prosecutor did not misstate the State's burden. The prosecutor concluded his closing argument by pointing to the minor discrepancies in witness testimony and explaining that did not rise to reasonable doubt. He said, in relevant part:

> **STATE:** . . .And there is no doubt, yeah, Shawn Sloan was inconsistent with whether or not he got the doggone nail clippers from the counter or the medicine cabinet or whatever. That is not reasonable doubt in this case.
>
> He was inconsistent on whether the comforter, whether it's over him or under him in the bathroom. That is not reasonable doubt.
>
> . . . .

But when you stop and look at that inconsistencies, which there is always reasonable doubt -- yeah, there is no perfect case. Every case is going to have a conflict. The question to you is, do those conflicts amount to reasonable doubt.

I submit one would be like if Shawn Sloan came in here and told you or told the detective one day, well, it didn't happen, or, you know, it was an insurance scam and he changed his testimony, that would be a reasonable doubt. We wouldn't even be here.

But look at the elements, the reasonable doubt applies to the elements of the crime, not to whether or not it was a hot day that day or a cold day or a sunny day or rainy day. It doesn't matter. Reasonable doubt applies to the elements of robbery, to the elements of kidnapping, to the elements of grand theft auto.

(Resp. Exh. 9, AV6:T 862-64.)  In context and entirety, the prosecutor was conveying that the State was not required to adduce perfect testimony in order to meet its burden.

The state trial court's underlying determination that there was no basis to object to the prosecutor's statement settles there were no viable state law arguments overlooked by Lopez's trial counsel. Because the underpinnings for ground eight of the instant petition depend on state law arguments rejected by the state courts, Lopez cannot meet his burden of showing that the state decision on his claims of ineffective assistance of counsel resulted in an unreasonable application of Strickland.

Moreover, Lopez fails to show that counsel overlooked a viable constitutional argument with regard to the prosecutor's comments. As to such a claim, the standard of review is whether, on the merits, the comment so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 178 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). In Lopez's case, it is objectively reasonable to conclude the prosecutor's arguments fell within the ambit of fair comment and in any event, did not deprive Lopez of a fundamentally fair trial. Accordingly,

Lopez cannot show his counsel's performance regarding the prosecutor's remarks in relation to the state's burden was constitutionally deficient.

Further and alternatively, it is objectively reasonable to conclude the state adduced evidence sufficient to permit a rational jury to conclude that Lopez committed the alleged crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Because Lopez in his rule 3.850 motion did not plead facts showing there was a reasonable probability of a different outcome had counsel objected to the prosecutor's remarks on either state or constitutional grounds, he did not satisfy the prejudice prong.

Further supporting a finding of no prejudice is that any claimed error was harmless due to the trial court's repeated instruction to the jury that it was to follow the law set out in the instructions given by the court, and only that law. (Resp. Exh. 9, AV6:T 906-07.) The trial judge's parting instruction to the jury before deliberating were, in relevant part:

> **COURT**: In closing, let me remind you that it is important that you follow the law as I have set forth in these instructions in deciding your verdicts. There are no other laws that apply to this case. And though you might not like the law that must be applied, you must use it.

(Resp. Exh. 9, AV6:T 912.)[14]  In view of the trial court's instructions, any claimed improper comment was harmless in view of the ample evidence of Lopez's guilt and did not did not have a substantial and injurious effect or influence on the jury's verdict. Brecht, supra. Accordingly, Lopez cannot show entitlement to relief on ground eight of his petition.

Ground Ten

---

[14] The record thus contradicts Lopez's erroneous assertion the prosecutor's comment was fresh in the jurors' minds. The admonishment to follow only the law as given to them in the instructions occurred at the conclusion of closing remarks.

Lopez contends that his trial counsel was ineffective for failing to question Jennison as to whether a letter admitted in evidence "was written or dictated by himself."[15] (Doc. 4 at 9.) He alleges the letter "would have established that Mr. Jennison knew the victim and that the victim was part of the scam but wouldn't change his story because he was afraid to face more time."  (Doc. 4 at 9.) Lopez's claim is exhausted only to the extent raised in his 3.850 motion.

In Lopez's postconviction motion, he alleged he was prejudiced because, had counsel questioned Jennison about this letter, Jennison would either have admitted its contents or, at the very least, his attorney would have been able to discredit Jennison. (Resp. Exh. 14 at 15.) The postconviction court found there was no reasonable probability the outcome at trial would have been different because Jennison testified that he and Lopez robbed the victim and the two contrived the insurance scam story in the event they were arrested. (Resp. Exh. 15 at 4.)

At trial, Lopez himself testified only that he "thought" the letter was from Jennison, but did not know if actually was from him. (Resp. Exh. 9, AV5:T 747-48.) Neither his rule 3.850 motion nor his habeas petition sets forth any objective facts, which would establish that Jennison, in fact, authored the subject letter. He fails to overcome the strong presumption that counsel performed effectively regarding the authenticity of this evidence because at least one reasonably competent attorney could have declined to explore the authorship of the letter since any denial by Jennison could have been utilized by the State to claim that Lopez was behind any fabrication. Cf. Chandler v. United States, 218 F.3d 1305, 1321 (11th Cir. 2000)("a lawyer reasonably could also fear that character evidence might, in fact, be counterproductive: it might provoke harmful cross-examination and rebuttal witnesses. Misgivings about hurtful

---

[15] The subject letter is found in Respondent's Exhibit 9, R 152.

cross-examination and rebuttal witnesses have been decisive to the Supreme Court when it determined that counsel was effective. <u>See</u>, e.g., <u>Burger v. Kemp</u>, 483 U.S. 776 (1987) (concluding that failure to introduce character evidence was effective performance because witnesses could have been subjected to harmful cross-examination or invited other damaging evidence))[footnote omitted].

In effect, Lopez urges his attorney should be found to be ineffective on the off chance Jennison might have offered favorable evidence at trial. However, there is no indication that Jennison would have offered testimony that Lopez was falsely accused. Lopez's claim is based on speculation.

The postconviction court found it was unlikely Jennison would have admitted to writing or dictating the letter since he would have been subject to perjury charges. (Resp. Exh. 15 at 4.) In addition, the postconviction court found it unlikely that Jennison would admit to perjuring himself during the trial he hoped would win him favorable treatment at his own sentencing. At least one reasonably competent attorney could have similarly concluded at the time of Lopez's trial, and, as such, deficient performance has not been shown.

Lopez's claim fails analysis under the prejudice prong. The victim testified he was kidnapped and robbed and maintained there was no insurance scam. Detective Martin found no evidence of any insurance scam and, in view of Lopez's own testimony that there was no insurance scam, it can be objectively concluded that there was no reasonable probability of a different outcome had counsel pursued the letter as proposed.

Ground ten does not warrant habeas corpus relief.

Ground Eleven

Lopez contends his trial counsel was ineffective for not objecting to an allegedly prejudicial comment by Detective Martin that "he believed a robbery was committed and that the victim was telling the truth[,]" on grounds such constituted improper vouching and bolstered the victim's testimony. (Doc. 4 at 16.) This claim does not meet the AEDPA standards. The postconviction court in denying Lopez's ground found the detective testified based on his investigation that the events described by the victim took place and concluded the officer's testimony did not indicate the officer had commented on the victim's credibility. (Resp. Exh. 15 at 5.) It is objectively reasonable to so find. During cross-examination, the defense attorney asked various questions about what Sloan had told Detective Martin regarding the events that occurred and then the following took place:

> **DEFENSE:** And is it fair to say that you took him at face value as far as what he was telling you?
>
> **WITNESS**: At what point?
>
> **DEFENSE:** At any point.
>
> **WITNESS**: As a matter of routine, people give us a statement, and then I look for some sort of other fact to support those statements. If all of the facts that I've looked into have supported the statements, in this case the victim, has given me to this point, I believe them. The same with suspects. Every person I interview, I look for something independent of what they are telling me to support their statements. And in this case those had supported it so I believed him, yes.

(Resp. Exh. 9, AV4:T 507-08.) The complained-of comment was directly elicited by defense counsel in the course of exploring the possibility that Sloan had participated in the incident. On redirect, the following took place:

> **STATE:** Detective, Mr. Hudzietz was asking you about did you take the victim at face value. Let me ask you this: As far as your investigation goes, with each step of the investigation until you make the arrest, and even after the arrest with the continuation of any part of your investigation, are you still looking

for evidence of corroboration and also looking for evidence that would dispute anything that the victim said?

       **WITNESS**: Yes, sir.

       **STATE:** And even up to this point today -- I think he asked you if you took the victim at face value then. How about now?

       **WITNESS**: Well, each time I get a statement, I'm listening to what he says. And if everything he has said is supported, I have no reason not to believe him.

       **STATE:** Is there anything that came up through your investigation, through your efforts to corroborate or to discredit anything as far as this robbery, that this just never happened?

       **WITNESS**: No, sir. I believe it happened.

       **STATE:** Did this kidnapping never happened [sic]?

       **WITNESS**: No, sir. I believe it happened.

       **STATE:** That his car wasn't stolen?

       **WITNESS**: I believe his car was stolen.

       **STATE:** Any evidence or indication as far as an issue of an insurance scam?

       **WITNESS**: No, sir. Everything is as the victim told me it was.

(Resp. Exh. 9, AV4:T 511-12.)

       The detective, in his testimony, related the facts discovered in the investigation and concluded nothing indicated this incident was contrived as an insurance scam. Based on the above exchanges, at least one reasonably competent attorney could have declined to object to the officer's later statement he believed a robbery had occurred as conveying no more than the point that the officer found no facts in his investigation to indicate the crimes were contrived.

Even if the comment were objectionable, it was harmless at most. The detective's comment that he believed a robbery had occurred does not constitute improper bolstering and could hardly be surprising to any juror during the trial of the person arrested by the detective for committing the robbery. Moreover, the jury had the victim's testimony before it from which to make an independent assessment of his credibility, and Lopez points to nothing in the investigation which would have materially disputed the victim's report. Given the corroborating testimony of the co-defendant, it is objectively reasonable to conclude that the outcome of the trial would not have been different had counsel objected to the officer's testimony as proposed. Accordingly, it can be objectively concluded Lopez cannot establish either prong of the Strickland standard that governs his claim.

Ground eleven does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Lopez's petition for writ of habeas corpus is denied, with prejudice. The Clerk is directed to enter judgment against Lopez and to close this case.

ORDERED at Tampa, Florida, on February 15, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jose Lopez, Pro se